UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| ALONZO GERALD RICHARDSON | CIVIL ACTION NO: 16-1610 |
| VERSUS | JUDGE DONALD E. WALTER |
| BOSSIER CASINO VENTURE, INC. | MAGISTRATE JUDGE HORNSBY |

_____

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment or for Partial Summary Judgment [Doc. #21] filed by Defendant, Bossier Casino Venture, Inc. Plaintiff, Alonzo Gerald Richardson, proceeding *pro se*, opposes the motion. [Docs. #23, 27].[1] For the reasons assigned herein, the motion for summary judgment [Doc. #21] is **GRANTED**.

## BACKGROUND FACTS

This case arises out of Plaintiff's brief employment with Bossier Casino Venture, Inc. (hereinafter, "BCV"), as a part-time member of the bell staff at Margaritaville Resort Casino, in Bossier City, Louisiana. Plaintiff alleges that BCV discriminated against him on the basis of race and sex, subjected him to a hostile work environment, and retaliated against him, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Plaintiff was hired by BCV in April 2013; however, because Margaritaville had not yet opened, Plaintiff did not begin work until early June 2013. [Doc. #21-2, p. 1, ¶3]. Plaintiff

---

[1] Although Plaintiff styled his second filing as a *motion* for summary judgment [*see* Doc. #27], a review thereof indicates that the filing is more accurately construed as a memorandum in opposition to Defendant's motion for summary judgment. The filing repeats earlier arguments contained in Plaintiff's original opposition, while also urging additional bases for his arguments in opposition. To the extent the filing raises new points, this ruling considers those; however, to the extent that Plaintiff intended to move for summary judgment, the motion [Doc. #27] is meritless and is therefore **DENIED**.

1

attended new hire orientation on June 6, 2013, after which he signed the "Margaritaville Resort Casino Handbook Agreement," acknowledging that he had received a copy of the employee handbook, outlining BCV's regulations, policies and procedures. [Doc. #21-2, p. 2, ¶7; Doc. #21-7]. Plaintiff's part-time status was explained to him, and meant that, during slow business days, he "could be sent home early due to the lack of business volume." [Doc. #21-3, p. 3; Doc. #23-1, p. 2, ¶10].[2]

Plaintiff asserts that BCV's discriminatory conduct began with a July 21, 2013, incident, during which a co-worker made offensive remarks toward Plaintiff, apparently attempting to call into question Plaintiff's sexual orientation. [Doc. #1, p. 1, ¶4]. Plaintiff claims to have immediately "sent a text message to his direct manager and her assistant detailing the interaction." *Id*. Thereafter, Plaintiff claims that his co-workers would routinely tease him for not participating in their sexually-charged comments and conversations, "question his sexuality, joke and belittle him." *Id*. at p. 1, ¶5. He further alleges that a particular bell captain would "[q]uite frequently" use racial slurs, including referring to himself as a "[h]ouse [n]igga" and other employees who worked outside as "[f]ield [n]iggas." *Id*. at p. 1, ¶6. However, Plaintiff states that he did not report having been the target of these racial slurs until December 23, 2013. [Doc. #1, pp. 2-3, ¶12].

At some point, in response to the above-described environment, Plaintiff alleges that he attempted to initiate a transfer by inquiring of his direct manager, Jordan Walton, how to apply for same. Plaintiff claims that Ms. Walton provided him inadequate assistance by failing to advise that he submit an "internal transfer form," resulting in Plaintiff being considered alongside five "outside candidates." [Doc. #1, p. 2, ¶7]. Plaintiff believes that, after his initial

---

[2] Plaintiff claims that BCV's scheduling manager merely used his part-time status "as an excuse" to send him home early. [Doc. #23-1, p. 2, ¶¶10, 11].

complaint, his hours were cut, he was "permanently placed on low volume days," and management repeatedly used an unreliable contact number despite having allegedly been advised that Plaintiff could not be reached via said number.[3] *Id*. at p. 2, ¶10.

On August 20, 2013, Plaintiff claims that he requested paid time off ("PTO") and was not told until he had already left town, on vacation, that he needed to fill out an official "request form." [Doc. #1, p. 2, ¶8]. When he informed the relevant bell captain that he was already out of town, he was allegedly told that it was "not a big deal," as the PTO had already been approved; however, upon returning to work, Plaintiff received a "1 point deduction" for a "call out." Plaintiff believes "that this was an act of retaliation for complaining and 'coming out' to management about his sexuality." *Id*. For its part, BCV submits a form, dated December 24, 2013, entitled "Coaching and Counseling Action," unsigned by either Plaintiff or any representative of BCV, which purports to reflect the dates of each of Plaintiff's attendance policy infractions but does not include an August 20, 2013 infraction. [Doc. #21-8; Doc. #21-3, p. 3].

On September 25, 2013, Plaintiff alleges that he received a "no call/no show," five-point infraction from Ms. Walton, due to a schedule change of which Plaintiff claims to have not been notified. Plaintiff claims to have successfully challenged the infraction points, which were ultimately removed by "Ms. Walton's manager." [Doc. #1, p. 2, ¶9].[4] Nonetheless, Plaintiff was allegedly advised during that appeal process that Ms. Walton's "actions against him were due to their personalities not 'jiving' well together," causing Plaintiff to believe that Ms. Walton acted in retaliation. *Id*.

---

[3] It is unclear whether Plaintiff refers to this attempt to initiate a transfer, or the July 2013 text message report, as his "initial complaint," but the distinction is not relevant.
[4] Based on references made elsewhere in the record, "Ms. Walton's manager" is understood to be Linda Ferguson, Vice President of Hotel Operations. [*see e.g.* Doc. #23, p. 3; Doc. #21-3, p. 4, ¶9].

On November 4, 2013, Plaintiff alleges that Ms. Walton administered an unwarranted "verbal warning" to Plaintiff for "job abandonment," without allowing Plaintiff to explain that his absence resulted from a bell captain instructing Plaintiff to "get fitted for the winter wardrobe in another building." [Doc. #1, p. 2, ¶11]. Thereafter, Plaintiff claims that he hand-delivered a "formal letter of complaint," to the Human Resources Employee Relations Manager, David Brossette, on November 5, 2013. [Doc. #1, p. 2, ¶12; Doc. #23-2, pp. 5-6]. On December 23, 2013, Plaintiff met with Mr. Brossette and Linda Ferguson to discuss his complaints, during which meeting he allegedly reported having been a target of the above-described racial slurs. [Doc. #1, pp. 2-3, ¶12]. Plaintiff alleges that, the next day, he was placed under the supervision of the offending bell captain, "severely harassed," forced to step away from his duties "during peak check out hours," and "told to leave early." *Id*. at p. 3, ¶13.[5]

That same day, December 24, 2013, Plaintiff requested and was granted a leave of absence. [Doc. #1, p. 3, ¶14]. Plaintiff claims that his request was stated as one for medical leave. [Doc. #23, p. 11]. In early January 2014, Plaintiff submitted a written request for workers' compensation coverage, which was denied on January 17, 2014. [Doc. #21-10]. Via letter dated March 4, 2014, Mr. Brossette notified Plaintiff that he had exhausted all personal leave and should contact his supervisor, Ms. Walton, by 5:00 p.m., on March 7, 2014. *Id*. The letter further stated that "[a]ny absence moving forward from that date (3/7/2014) will place you in violation of our attendance policy which will result in disciplinary action including possible termination." *Id*. Plaintiff acknowledged receipt of the foregoing letter. [Doc. #23-2, p. 14]. Although Plaintiff claims to have attempted, albeit unsuccessfully, to contact his supervisor in accordance with Mr. Brossette's instructions, he does not dispute that he ultimately failed to do so. *Id*.; [*see also* Doc.

---

[5] Attached to Mr. Brossette's affidavit, BCV has submitted a "timecard report," indicating that Plaintiff worked 7.25 hours on December 23, and 8.25 hours on December 24, 2013. [Doc. #21-9].

4

#23, pp. 11-12]. BCV terminated Plaintiff, on March 14, 2014, for "failure to return to work following his personal leave," which was "essentially job abandonment." [Doc. #21-3, pp. 5-6, ¶¶12, 13]. Plaintiff states that he "was terminated due to being placed on the schedule [on March 10, 2014] without [his] knowledge." [Doc. #23-1, p. 3, ¶¶15, 16].

On December 10, 2013, Plaintiff submitted an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC"). [Doc. #23-2, pp. 1-4]. On March 17, 2014, three days after he was terminated, Plaintiff filed a charge of discrimination with the EEOC, alleging discrimination on the basis of color, sex and retaliation, from June 3, 2013 to December 24, 2013, and checked the box marked "continuing action." [Doc. #21-4]. Plaintiff's charge states that he "was subjected to a hostile work environment, harassed about [his] sexuality, subjected to lewd comments about female guests and workers and [] was told by a co-worker that straight men are not normally as picky as [he was.]" *Id*. The EEOC issued a Dismissal and Notice of Rights on August 22, 2016. [Doc. #10-1, p. 6]. The instant complaint was then filed on November 18, 2016, seeking court-mandated changes to BCV's policies and procedures, as well as $300,000.00 for lost wages and pain and suffering. [Doc. #1, p. 4, ¶15].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate elements of the non-moving party's case, but need only point out the absence of evidence in support thereof. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311. Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

## **LAW AND ANALYSIS**

Title VII prohibits employers from discriminating against their employees on any of seven specified criteria, five of which—race, color, religion, sex, and national origin—are personal characteristics set forth in 42 U.S.C. § 2000e-2. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2525 (2013). "The two remaining categories of wrongful employer conduct—the employee's opposition to employment discrimination, and the employee's submission of or support for a complaint that alleges employment discrimination—are not wrongs based on personal traits but rather types of protected employee conduct. These latter two categories are covered by a separate, subsequent section of Title VII, § 2000e–3(a)." *Id*.

Claims alleging discrimination based on personal characteristics are subject to a "lessened causation standard." *Id*. (citing 42 U.S.C. § 2000e-2(m)). With the passage of the Civil Rights Act of 1991, plaintiffs may "obtain declaratory relief, attorney's fees and costs, and some forms of injunctive relief based solely on proof that race, color, religion, sex, or nationality was a motivating factor in the employment action; but the employer's proof that it would still have taken the same employment action would save it from monetary damages and a reinstatement order." *Id*. Thus, Plaintiff need only show that the discriminatory basis was a motivating factor, for those claims that fall under this "personal characteristics" or "status-based" category. However, in *Nassar*, the Supreme Court held that the heightened "but for" causation was the proper standard of causation for Title VII retaliation claims. 133 S.Ct. at 2528 (". . . Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

At the outset, BCV argues that Plaintiff has failed to exhaust his administrative remedies as to any claims of retaliation surrounding either his March 14, 2014, termination or those claims of retaliation relevant to his supervisor, Ms. Walton. Before an individual can pursue a Title VII claim in federal court, he must first exhaust his available administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).The Fifth Circuit has recognized that the scope of Title VII's exhaustion requirement is defined by two competing policies. On one hand, "because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id*. at 788-89.

Here, Plaintiff's charge itself, dated three days *after* Plaintiff's termination, fails to mention termination and likewise fails to state any *facts* in support of Plaintiff's claims of retaliation. The charge merely reflects that Plaintiff checked the box marked "retaliation," but only offered facts in support of his allegations of hostile work environment and discrimination based on personal characteristics. As to his termination, Plaintiff has submitted what purports to be a July 14, 2014 email, ostensibly submitted to the EEOC investigator assigned to his case, which alleges unlawful termination, at a time when the EEOC's investigation would have been pending and two years before it issued a dismissal. [Doc. #23-2, p. 7]. Thus, while there is certainly some merit to BCV's arguments, for purposes of this ruling, the Court assumes without deciding that Plaintiff exhausted his administrative remedies. As explained below, Plaintiff's claims nevertheless fail. Even liberally construed, Plaintiff's case, as a whole, is comprised of the sort of "conclusory or unsubstantiated allegations" which are insufficient to survive summary judgment. *See Little*, 37 F.3d at 1075.

The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715). Generally, a plaintiff can establish a prima facie case of discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably because of his membership in that protected class than other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n. 13 (1973). Here, Plaintiff's case suffers fatal flaws as to both the third and fourth elements. As to the third element, only Plaintiff's termination rises to the level of adverse employment action. And, aside from

unsubstantiated allegations in his EEOC intake questionnaire [*see* Doc. #23-2, pp. 2-3], Plaintiff has made no attempt to establish the fourth element, and indeed has wholly failed to do so.

Nonetheless, if this Court assumes for purposes of this ruling that Plaintiff has established a prima facie case, the burden would then shift to BCV to show that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Without a doubt, BCV meets this burden. As stated, BCV terminated Plaintiff, on March 14, 2014, over two months after taking leave, for "failure to return to work following his personal leave," which was "essentially job abandonment." [Doc. #21-3, pp. 5-6, ¶¶12, 13]. For his part, Plaintiff does not dispute that he received a letter, notifying him that his leave was exhausted and directing him to contact his supervisor or risk termination. It is undisputed that he failed to make contact with his supervisor. BCV was well within its rights to terminate Plaintiff's employment for a legitimate, nondiscriminatory reason.

As to Plaintiff's retaliation claims, the initial burden rests with Plaintiff, as the employee, to produce evidence: (1) that he participated in an activity protected by Title VII, (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). Because of Plaintiff's generous yet legally inaccurate use of the term retaliation throughout his complaint, it is difficult to ascertain the true nature of Plaintiff's retaliation claims. However, even if the Court assumes that Plaintiff could establish a prima facie case, he would nevertheless suffer the same fate as above, once the burden shifted to BCV to articulate a legitimate, non-retaliatory reason for Plaintiff's termination. *See Shackelford,* 190 F.3d at 408. As noted above, the ultimate question is whether a reasonable fact-finder could conclude that the employer would not have fired Plaintiff "but for"

Plaintiff's decision to engage in an activity protected by Title VII. *See Feist v. La., Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 454 (5th Cir. 2013) (citation omitted).

At this stage, it is true that "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Little*, 37 F.3d at 1075). Here, no controversy exists; BCV lawfully terminated Plaintiff for what it essentially deemed to be job abandonment, which is a legitimate, nondiscriminatory, non-retaliatory reason for Plaintiff's termination under the facts of this case. *See EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1448 (5th Cir.1995) (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988)) (Employment discrimination laws are "not intended to be a vehicle for judicial second guessing of employment decisions, nor . . . to transform the courts into personnel managers."). BCV is entitled to summary judgment.

Plaintiff's only remaining claim alleges that he was subject to a hostile work environment. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). It is equally clear that "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee," does not implicate Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Plainly stated, Plaintiff's allegations do not fall within the purview of Title VII's protections.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendant Bossier Casino Venture, Inc.'s Motion for Summary Judgment [Doc. #21] is hereby **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of February, 2018.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE